IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TRUSTEES OF THE NEWSPAPER GUILD ) | |
| INTERNATIONAL PENSION FUND, *et al.* ) | **Case No. 1:08-cv-00608** |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| ) | |
| EL VOCERO DE PUERTO RICO, INC., *et al.* ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION TO VACATE ENTRY OF DEFAULT**

On July 7, 2008, Defendants, El Vocero de Puerto Rico, Inc. and Caribbean International

News Corporation ("Defendants"), moved to vacate the Court's May 13, 2008 Entry of Default.

Entry of default may only be set aside, however, for "good cause." *Fed R Civ Pro* 55(c). And

good cause only exists when a Court either 1) lacks personal jurisdiction over the party seeking

to vacate the default entry; or 2) Defendant can prove upon a "balancing of the equities" that it is

appropriate to vacate the default entry. Here, the Court can properly exercise personal

jurisdiction over the Defendants; Defendants' default was willful; Defendants have alleged no

meritorious defense in the underlying matter; and setting aside the judgment would be prejudicial

to the Plaintiffs. Thus, Plaintiffs respectfully request that the Court deny Defendants' motion to

vacate the May 16, 2008 Entry of Default.

**I.    THE COURT CAN EXERCISE PERSONAL JURISDICTION OVER
DEFENDANTS BECAUSE THEY WERE PROPERLY SERVED**.

On April 18, 2008, Roberto Diaz served Angel J. DeJesus, who represented that he was

the Defendants' Controller, with a Summons and Complaint for both Defendants.  Affidavit of

Roberto Diaz ("Diaz Aff."), ¶ 7.  Plaintiff docketed Mr. Diaz' returns of service on May 13,

2008.  See Docket #2-3.[1]  Mr. Diaz is over the age of 18, not a party to this matter and a process

server in good standing in the Commonwealth of Puerto Rico.  Affidavit of Roberto Diaz ("Diaz

Aff."), ¶2, 3.  In addition to swearing under oath to his effectuation of service upon Mr. DeJesus

in the returns of service, Mr. Diaz' affidavit further describes to this Court "in detail when and

how he effectuated service."  See Mobern Electric Corp. v. Walsh, 197 F.R.D. 196, 198 (D.D.C.

2000).

Indeed, Mr. Diaz declares that a receptionist initially greeted him when he entered

Defendants' building.  Diaz Aff., ¶ 5.  When Diaz informed the receptionist he was there to serve

a Summons and Complaint upon Defendants, the receptionist departed and returned with another

man.  Id., ¶ 5-6.  Diaz asked this man if he was authorized to receive service of process for the

Defendants.  Id., ¶ 7.  The man replied that he was authorized to receive service because he was

the Defendants' Controller.  Id., ¶ 7.[2]  When Diaz asked the man his name, the man responded

---

[1] Plaintiffs inadvertently docketed the returns of service a second time on July 16, 2008 in preparing Mr. Diaz Affidavit.  Docket #16.  Thus, Mr. Diaz refers to the return of services' filing on July 16, 2008.

[2] Angel J. DeJesus' Unsworn Statement under Penalty of Perjury states that he is the Controller of Caribbean International News Corporation.  To the extent Defendants might intend to claim he cannot receive service of process on behalf of El Vocero de Puerto Rico, Plaintiffs note that DeJesus represented he was also authorized to receive service on behalf on El Vocero.  Soto Aff., ¶ 7.  Furthermore, Defendants hold themselves out, in legally binding documents, as mutually interchangeable corporate entities, see, e.g., Soto Aff., ¶ 10, Ex. 3 ("De La Primera Parte: *Caribbean Internacional News Corporation ("El Vocero")*) and share the same address.  Complaint, ¶ 3-4; Defendants' Verified Answer and Affirmative Defenses, ¶ 3-4.  Thus, any power to serve DeJesus as an agent of Caribbean International News Corporation, which Plaintiffs' plainly possess, Flynn v. Pulaski Constr., 2006 WL 47304, *4 (D.D.C. 2006) (finding service is sufficient when an agent of a corporation represents she is authorized to be served and

that he was Angel J. DeJesus.  Id., ¶ 8.  Diaz then served DeJesus with a Summons and

Complaint for both Defendants and subsequently documented this service in two separate

Affidavits of Service.  Id., ¶ 9.

Nevertheless, and in an apparent attempt to question the Court's personal jurisdiction

over Defendants, Defendants' Motion to Vacate Entry of Default contains an Unsworn Statement

under Penalty of Perjury, signed by Mr. DeJesus, which claims he never received service of

process.  Neither the statement nor Defendants' Memorandum of Points and Authorities in

Support of its Motion to Vacate Entry of Default, however, contain any further evidence to

support DeJesus' statement that he was never served with process.  This failure to plead any

further evidence is fatal to Defendants' apparent claim that the Court lacks personal jurisdiction

because "a bare allegation by a defendant that he was improperly served cannot be allowed to

bely the private process server's return."  Mobern, 197 F.R.D. at 198 *citing* FROF, Inc. v. Harris,

695 F.Supp. 827, 829 (E.D. Pa. 1988).  See also Greater St. Louis Constr. Laborers Welfare Fund

v. Little, 182 F.R.D. 592 (D. Mo. 1998) (finding defendant's affidavits claiming they never

received service of process insufficient to rebut a signed return of service accompanied by the

server's declaration, under penalty of perjury, that service occurred).  Thus, this Court plainly has

personal jurisdiction over the Defendants.

## II.    THE BALANCE OF EQUITIES WEIGHS IN FAVOR OF PLAINTIFFS AND UPHOLDING THE COURT'S ENTRY OF DEFAULT.

In determining whether an equitable basis exists to vacate a default entry, this Court must

balance whether: 1/ the default was willful; 2/ Defendants' alleged defense is meritorious; and 3/

---

the defendants receive actual notice of the suit), rightly extends to the power to serve DeJesus as
an agent of El Vocero de Puerto Rico.

whether a set-aside would prejudice the Plaintiffs.  IUPAT Pension Fund v. H.W. Ellis, 288

F.Supp.2d 22, 26 (D.D.C 2003).  The evidence indicates that Defendants' default was willful;

that its alleged defenses are lacking in merit; and that Plaintiffs will incur prejudice if the Court

vacates the default entry.  Thus, Defendants cannot present "good cause" to vacate the default

entry and this Court must deny their motion.[3]

Plaintiffs properly served Defendants on April 18, 2008.  Mobern, 197 F.R.D. at 198.

Defendants aver no facts explaining why they failed, given proper service of the Summons and

Complaint upon them, to submit an answer in this matter until nearly three months later on July

7, 2008.  Absent any reasonable explanation for this delay, the Court can only conclude that

Defendants willfully chose not to respond and the Court should so find.[4]

---

[3] Defendants' Motion to Vacate the Entry of Default, and Memorandum in support
thereof, contain no analysis, or even an assertion, that there is "good cause" to vacate the Court's
earlier Order.  The Motion and Memorandum merely rely on the Unsworn Statement under
Penalty of Perjury by Mr. DeJesus, which is ineffective to strip this court of personal jurisdiction.
And although the Defendants submitted, as they must under Local Rule 7(g), a verified answer
presenting an assortment of common law contract defenses, See Def. Answer, Defendants'
Affirmative Defenses, ¶ 1-32, all of those defenses utterly lack merit in an ERISA action, which
broadly disallows their assertion.  See Flynn v. RC Tile, 353 F.3d 953, 957 (D. C. Cir. 2004)
("'[ERISA] puts multiemployer plans in a stronger position than they would otherwise occupy
under common-law contract principles'; it facilitates recovery of contributions from delinquent
employers by limiting the defenses available to an employer in an action brought to enforce the
obligation under §515"); Agathos v. Starlite Motel, 977 F. 2d 1500, 1505 (3rd Cir. 1992) (noting
that "research has only uncovered three recognized defenses [to action to collect delinquent
ERISA contributions]: (1) the pension contributions themselves are illegal ...; (2) the collective
bargaining agreement is void ab initio ...; and [sic] (3) the employees have voted to decertify the
union as its bargaining representative ...").  See also Trustees of the Operating Engineers Pension
Trust v. O'Dell, 682 F.Supp 1506, 1516 (D. Nev. 1988) (observing that "it is well-established
[that equitable defenses, or those that arise out of traditional contract law] are unavailable in suits
brought under the LMRA and ERISA to collect delinquent trust fund contributions").

[4] Plaintiff finds Defendants' claim not to have been properly served at this stage of the
litigation very curious.  Plaintiffs informed Defendants' now  former counsel, Pedro Manzano, of
this lawsuit on April 11, 2008, just two days following its filing.  Affidavit of Quinn Philbin

In addition to the litany of ERISA-preempted, non-meritorious defenses Defendants raised in their answer, Defendants deny that any agreement exists compelling them to make ERISA contributions to Plaintiffs after April 2007. Defendants' Verified Answer and Affirmative Defenses ("Def. Answer"), ¶ 5-7, 11-13, 23. Indeed, Defendants' President, Miguel Roca, has specifically declared under penalty of perjury that no such agreement exists. See Def. Answer. Yet Mr. Roca himself is a signatory, on behalf of both El Vocero de Puerto Rico and Caribbean International News Corporation, to an August 2, 2007 Stipulation, which specifically recognizes that the parties had earlier agreed to extend their collective bargaining agreement, including the obligation to make ERISA contributions to Plaintiffs, through May 31, 2009 and that the terms and conditions of any successor agreement to the CBA which would expire on May 31, 2009 would be retroactive to January 1, 2009. Affidavit of Nestor Soto ("Soto Aff."), ¶ 11-12; Ex. 3.[5] Thus, Defendants' assertion that "neither of the Defendants has any further

---

("Philbin Aff."), ¶ 4. No less than three days later, Miguel Roca, Defendants' President, informed Mr. Soto that he wanted Philbin to call him to discuss the suit. Id., ¶ 5. After Philbin and Roca spoke on April 16, 2008 regarding the suit and Roca failed to call Philbin back, as Roca had promised, Philbin sent a courtesy electronic copy of the Complaint to Manzano so he could review it in conjunction with Plaintiffs' offer to settle the matter through a Consent Judgment. Id., ¶ 6-7. After Philbin again reached out to Manzano on April 28, 2008, Manzano informed Philbin on May 1, 2008 that Defendants had retained Defendants' counsel herein, Stuart Weinstein-Bacal, to handle this matter. Id. , ¶ 8-9. Plaintiffs' counsel sent Defendants' counsel, Mr. Roca and Mr. DeJesus a copy of Plaintiffs' Motion for Entry of Default on May 14, 2008. Id., ¶ 10. On June 4, 2008, Defendants filed a Motion to Stay these proceedings while the parties sought to amicably settle the matter, representing to the Court that Defendants believed a settlement would be finalized within thirty days. Docket, # 10. Thus, Defendants received notice of the suit; retained new counsel to mount their defense; received a Motion for Entry of Default; and sought a Stay of the proceedings on the grounds that they believed a settlement of the matter was forthcoming; yet, now, three months after this series of events commenced, Defendants plead improper service.

[5] On December 18, 2006, Mr. Roca's father and predecessor, Gaspar Roca, had agreed in writing to extend the parties' agreement, including the obligation to make contributions to the

obligation" to make pension contributions to the Fund is clearly not a meritorious defense.  Def. Answer, ¶ 7.

Plaintiffs further note that Defendants' *conduct* moots any factual question whether the parties' December 2006 agreement to extend the terms and conditions of their collective bargaining agreement through May 31, 2009, including the obligation to make contributions to Plaintiffs, and the August 2, 2007 Stipulation reaffirming this agreement, require Defendants to make contributions to Plaintiffs after April 2007.  IUPAT, 288 F.Supp.2d at 29.  Indeed, as demonstrated by Exhibit A to Plaintiffs' Unsworn Declaration Under Penalty of Perjury, submitted in support of Plaintiffs' Motion for Entry of Default Judgment, Defendants continued to submit remittance reports to Plaintiffs long after April 2007, when Defendants claim their funding obligation expired.  Docket #9. [6]  Defendants further submitted contributions to the Plaintiffs for the months of May and June 2007, also after Defendants claim their funding obligation expired.  Affidavit of Quinn Philbin ("Philbin Aff."), ¶ 11.  As this Court has previously held on similar facts in an ERISA delinquency suit, these indicia of compliance with the extended agreement "bind" Defendants to the agreement.  IUPAT, 288 F.Supp.2d at 29.

Finally, compelling Plaintiffs to expend both litigation time and money to collect on a

Plaintiffs, through the end of May 2009.  Soto Aff., ¶ 4-6; Ex. 1.  Soto confirmed that the membership of his union ratified the contract extension via letter to Roca on December 27, 2006.  Id., ¶ 7, Ex. 3.  The parties reaffirmed the "existence" of this extension agreement when they signed the August 2, 2007 Stipulation, which resulted from talks sought by Miguel Roca due to the Defendants' alleged dire financial condition and which modified some of the terms of the contract extension (but not the pension obligations).  Id., ¶ 9-11.

[6] Indeed, Exhibit A is the Defendants' remittance report for the month of February 2008, a month for which Defendants specifically aver in their answer that "no remittance reports ... [were] due from either of the Defendants."  Def. Answer, ¶ 12.  Defendants have submitted a remittance report in *every* month from May 2007 through May 2008.  Philbin Aff., ¶ 11.

claim for which there is no meritorious defense will unfairly prejudice Plaintiffs. <u>IUPAT</u>, 288

F.Supp.2d at 31. It is particularly prejudicial where the Defendants have repeatedly stated

publicly that their financial situation is dire. Soto Aff., ¶ 9. Furthermore, even assuming the

Court fails to find that Plaintiffs will incur significant prejudice if the Court grants Defendants'

motion to vacate, the Court should still exercise its discretion to deny the motion because

Defendants' default was willful and they have offered no meritorious defenses. <u>IUPAT</u>, 288

F.Supp.2d at 31.

## III.    CONCLUSION.

This Court clearly has personal jurisdiction over the Defendants. Defendants willfully

defaulted in the action; failed to proffer legitimate meritorious defenses to Plaintiffs' Complaint;

and Plaintiffs will be substantially prejudiced if the Court grants Defendants' Motion to Vacate

the Entry of Default. For these reasons, the Court must deny Defendants's Motion to Vacate.


Respectfully Submitted,


_____/s/_____

Barbara L. Camens
DC Bar No.  366776
Barr & Camens
1025 Connecticut Ave. NW
Suite 712
Washington, D.C.  20036
(202) 293-9222
(202) 293-6893 (fax)

Counsel for Plaintiffs

IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

TRUSTEES OF THE NEWSPAPER GUILD          )
INTERNATIONAL PENSION FUND, *et al.*     )     **Case No. 1:08-cv-00608**
                Plaintiffs,          )
                        )
         v.          )
                        )
                        )
EL VOCERO DE PUERTO RICO, INC., *et al.*  )
                        )
           Defendants.          )
                        )

## <u>AFFIDAVIT OF QUINN PHILBIN</u>

Washington        )
                  )    ss
District of Columbia )

COMES NOW, the affiant, under oath, and declares as follows :

1.     My name is Quinn M. Philbin, and I have personal knowledge of the facts set forth in this Affidavit.  If called to testify, I would testify to the facts herein.

2.     I am over the age of 18, am laboring under no disability, and am otherwise competent to testify.

3.     I am a member in good standing of the bar of the state of New York.  I am employed by *Barr & Camens* in Washington, D.C., counsel to the Plaintiffs in this matter.

4.     Pedro Manzano is an attorney with the law firm of Fiddler, Gonzalez & Rodriguez, located in San Juan, Puerto Rico.  Fiddler, Gonzalez & Rodriguez, specifically Mr. Manzano, had provided representation to the Defendants herein in an earlier case before this Court with markedly similar facts.  Case No. 1:06-cv-00513.  Due to this history, on

April 11, 2008, I phoned Mr. Manzano and informed him that Plaintiffs had filed the instant lawsuit.

5.    Nestor Soto is the President of a labor organization, Union de Periodistas, Artes Graficas y Ramas Anexas ("UPAGRA"), which represents a bargaining unit of individuals employed by Defendants. On or about April 14, 2008, Miguel Roca, President of both Defendants in this matter, notified Mr. Soto that he wished to speak with me because he had been informed by his lawyers that Plaintiffs had filed the instant suit. Mr. Soto subsequently conveyed this request to me.

6.    Thus, on April 16, 2008, I phoned Mr. Roca. When I quoted the then present delinquency to Mr. Roca that Plaintiffs were seeking to recover in the lawsuit, he informed me that he would speak with his employees in the accounting department and call me back later that day. When Mr. Roca did not return my call, I again sought to reach him. On April 17, 2008, I left Mr. Roca a message asking that he call me about the lawsuit. I phoned Mr. Roca again on April 22, 2008 but his voicemail box was full and I could not leave a message.

7.    Also on April 17, 2008, I personally sent a courtesy copy of the Complaint in this matter to Mr. Manzano via electronic mail. With the same electronic mail, I also sent a draft consent judgment as a settlement proposal because the parties herein had amicably settled Case No. 1:06-cv-00513 through a consent judgment. I sent the Complaint to Mr. Manzano because I assumed his firm would provide representation to Defendants in this matter just as they had in Case No. 1:06-cv-00513.

8.    On April 28, 2008, I sent Mr. Manzano another email, informing him that Mr. Roca was

2

apparently no longer taking my calls. I again informed Mr. Manzano that I believed a consent judgment would be the most effective manner to resolve the parties' dispute and asked him to determine if his client was amenable to such a resolution.

9.      On May 1, 2008, Mr. Manzano informed me that he had spoken with "Miguel," which I assumed to be Mr. Roca, and that Miguel had informed him that the Defendants had retained Stuart Weinstein-Bacal to represent them in this matter.

10.     On May 14, 2008, I mailed a copy of Plaintiffs' Motion for Entry of Default, with an Affidavit in Support of Default, to Miguel Roca, Angel J. DeJesus and Stuart Weinstein-Bacal.

11.     Defendants submitted ERISA contributions due and owing to Plaintiffs for the months of May and June 2007 and has submitted remittance reports for the months of May 2007 through May 2008.

12.     Further this Affiant saith not,

Quinn Philbin

DISTRICT OF COLUMBIA

Quinn Philbin, the above named Affiant, who being sworn by me says that he has read this Affidavit consisting of    pages, including this signature page, and affirms that, under the penalty of perjury, the statements contained in the foregoing affidavit are true to the best of his knowledge, information, and belief.

Sworn and subscribed before me on this 1ST day of July 2008.

Certified Notary Public

3

My Commission Expires Apr 30 2008

IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| TRUSTEES OF THE NEWSPAPER GUILD INTERNATIONAL PENSION FUND, *et al.* | ) ) | **Case No. 1:08-cv-00608** |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | |
| EL VOCERO DE PUERTO RICO, INC., *et al.* | ) ) | |
| Defendants. | ) ) ) | |

## AFFIDAVIT OF ROBERTO DIAZ

| | |
|---|---|
| Toa Baja | ) |
| | )   ss |
| Puerto Rico | ) |

COMES NOW, the affiant, under oath, and declares as follows :

1.   My name is Roberto Diaz, and I have personal knowledge of the facts set forth in this Affidavit.  If called to testify, I would testify to the facts herein.

2.   I am over the age of 18, am laboring under no disability, and am otherwise competent to testify.

3.   I am a professional Process Server in Good Standing in the Commonwealth of Puerto Rico.

4.   On the morning of April 18, 2008, I went to 206 Ponce de Leon Avenue, San Juan, Puerto Rico to serve the Summons and Complaint in this lawsuit upon both El Vocero de Puerto Rico, Inc. and Caribbean International News Corporation.

5.   I informed a receptionist in the building that I was a process server and had come to serve a Summons and Complaint upon El Vocero de Puerto Rico and Caribbean International

News Corp. The receptionist then asked me to wait while he located an individual with whom I should speak.

6. The receptionist returned with a gray haired man who appeared to be between fifty-five and sixty-five years old and wore glasses.

7. When I asked the man if he was authorized to receive service on behalf of El Vocero de Puerto Rico and Caribbean International News Corporation, he responded "yes, I am the Controller" of both.

8. When I asked the man his name, he informed me it was "Angel J. De Jesus."

9. Based on these representations, I served Mr. DeJesus with both of the Summons and Complaints. I subsequently documented service of Mr. DeJesus in two separate Affidavits of Service. See Plaintiff's *Notice of Service of Process* filed July 16, 2008.

10. Further this Affiant saith not,

Roberto Diaz

PUERTO RICO

Roberto Diaz, the above named Affiant, who being sworn by me says that he has read this Affidavit consisting of   pages, including this signature page, and affirms that, under the penalty of perjury, the statements contained in the foregoing affidavit are true to the best of his knowledge, information, and belief.

Sworn and subscribed before me on this   day of July 2008.

Certified Notary Public

2

IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| TRUSTEES OF THE NEWSPAPER GUILD INTERNATIONAL PENSION FUND, *et al.*) | ) | **Case No. 1:08-cv-00608** |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| EL VOCERO DE PUERTO RICO, INC., *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## AFFIDAVIT OF NESTOR SOTO

| | | |
|---|---|---|
| San Juan | ) | |
| | ) | ss |
| Puerto Rico | ) | |

COMES NOW, the affiant, under oath, and declares as follows:

1.    My name is Nestor Soto, and I have personal knowledge of the facts set forth in this Affidavit. If called to testify, I would testify to the facts herein.

2.    I am over the age of 18, am laboring under no disability, and am otherwise competent to testify.

3.    I am the President of "Union de Periodistas, Artes Graficas y Ramas Anexas" ("UPAGRA"), TNG-CWA, Local 33225. Although all the documents attached to this Affidavit are in Spanish, I affirm that the English translation I provide of those documents herein is true and accurate.

4.    In my capacity as President of UPAGRA, I negotiate collective bargaining agreements with the Defendants.

5.     Until early 2007, I conducted such bargaining with Gaspar Roca, who was the President of Defendants.

6.     Via letter of December 18, 2006, Gaspar Roca agreed to extend the parties collective bargaining agreement, including the obligation to make contributions to Plaintiffs, until May 31, 2009. A true and accurate copy of that letter is attached hereto as Exhibit 1.

7.     On December 23, 2006, the membership of UPAGRA voted to ratify extending the parties' collective bargaining agreement, including the obligation to make contributions to Plaintiffs, until May 31, 2009. Via letter of December 27, 2006, I informed Gaspar Roca of the ratification and confirmed UPAGRA's consent to extend the collective bargaining agreement, including the obligation to make contributions to Plaintiffs, until May 31, 2009. A true and accurate copy of that letter is attached hereto as Exhibit 2.

8.     Miguel Roca became the President of the Defendants following the death of Gaspar in early 2007. In his capacity as President, Miguel became the lead bargaining agent for the Defendants.

9.     Due to the alleged dire financial conditions of Defendants, Miguel sought for UPAGRA certain modifications to the terms and condition of the extant collective bargaining agreement following Gaspar's death.

10.     On August 2, 2007, the parties memorialized modifications to the extension agreement they had agreed to December 2006 in a Stipulation. A true and accurate copy of the Stipulation is attached hereto as Exhibit 3.

11.     Miguel Roca signed the Stipulation on behalf of the Defendants. In the Stipulation, the parties specifically acknowledge the existence of the December 2006 agreement UPAGRA

2

reached with Defendants, through Gaspar Roca, to extend the collective bargaining agreement, including the obligation to make contributions to Plaintiffs, through May 31, 2009.

12.    The parties further agreed in the Stipulation that the terms and conditions of the successor collective bargaining agreement to the collective bargaining agreement which would expire on May 31, 2009 would be retroactive to January 1, 2009.

13.    Further this affiant saith not.

_____
Nestor Soto

*Affidavit No. 131*

PUERTO RICO

Nestor Soto, the above named Affiant, who being sworn by me says that he has read this Affidavit consisting of  pages, including this signature page, and affirms that, under the penalty of perjury, the statements contained in the foregoing affidavit are true to the best of his knowledge, information, and belief.

Sworn and subscribed before me on this _18_ day of July 2008.



_____
Certified Notary Public

**EXHIBIT 1**



18 de diciembre de 2006

Sr. Néstor Soto, Presidente
Sr. Angel Báez, Secretario Ejecutivo
UPAGRA
Calle 25 N.E. #347
Puerto Nuevo
San Juan, Puerto Rico
VIA FAX: (787) 749-4839

Estimados señores:

Nos referimos a la reunión que sostuvimos con el Comité de Negociación el pasado jueves, 14 de diciembre de 2006, sobre la renovación del Convenio Colectivo.

Estamos de acuerdo con la extensión hasta mayo de 2009. Sin embargo, como durante los últimos años hemos firmado una serie de acuerdos, creo es necesario reunirnos para asegurarnos del contenido del documento de renovación.

A estos efectos, sugiero celebremos una reunión de Comité de Negociación el jueves, 21 de diciembre de 2006 a la 1:00 p.m. en el Departamento del Trabajo.

Si lo anterior es de conformidad para ustedes, favor dejármelo saber.

Cordialmente,

Gaspar Roca

P. O. Box 9067515, San Juan, PR 00906-7515/Avenida de la Constitución 206, Puerta de Tierra, San Juan, PR 00901
Teléfonos: (787) 721-2300 / Fax: (787) 722-0131

**EXHIBIT 2**

# UNIÓN DE PERIODISTAS, ARTES GRÁFICAS Y RAMAS ANEXAS

27 de diciembre de 2006

Sr. Gaspar Roca
Presidente
El Vocero de P. R.
PO Box 9067515
San Juan, P.R. 00906-7515

Estimado señor Roca:

El pasado sábado, 23 de diciembre de 2006, se celebró la Asamblea de Ratificación o Rechazo de lo acordado tentativamente en las negociaciones del nuevo Convenio Colectivo.

Por este medio, le notifico que la matrícula ratificó los acuerdos de extender el Convenio Colectivo hasta el 31 de mayo de 2009, con retroactividad al 1ro de enero de 2009. En los próximos días nos estaremos comunicando con usted para firmar la estipulación de los acuerdos, que incluyen las auditorias anuales, con la posibilidad de reabrir las negociaciones para los artículos económicos.

También se le informó a la matrícula sobre los acuerdos para los Laudos en los casos de arbitraje A-06-49 y A-07-1273.

Sin nada más a que hacer referencia por el momento y deseándole muchas felicidades y éxitos en el Nuevo Año, junto a sus familiares, queda,

Atentamente,

Néstor Soto
Presidente

c. Sr. Luis Quintana
   Sr. Angel Báez
   Sr. Martín Sustache
   Sr. Charlie Ramis
   Lcdo. Miguel Simonet



**EXHIBIT 3**

## ESTIPULACIÓN

**DE LA PRIMERA PARTE**: Caribbean Internacional News Corporation ("El Vocero"), representada en este acto por su presidente, Sr. Miguel Roca.

**DE LA SEGUNDA PARTE**: Unión de Periodistas, Artes Gráficas y Ramas Anexas, ("UPAGRA"), Local 33225, afiliada a "The Newspaper Guild" (TNG), "Communication Workers of América" (C.W.A.), AFL-CIO-CLC-FT, representada en este acto por su presidente, Sr. Néstor Soto.

Las partes aquí comparecientes libre y voluntariamente suscriben el siguiente:

### ACUERDO

1. UPAGRA, es la representante exclusiva para propósitos de negociación colectiva de los miembros de la Unidad Apropiada, compuesta por empleados de El Vocero.

2. Entre El Vocero y UPAGRA, existe un Convenio Colectivo que expira el 31 de mayo de 2009, en el que se establece los salarios y demás términos y condiciones de empleo de los miembros de la Unidad Apropiada.

3. UPAGRA y El Vocero han tenido una relación de muchos años de negociación colectiva y ambas partes reconocen la importancia de que dicha relación sea una para el beneficio de todas las partes, incluyendo los empleados miembros de la Unidad Apropiada.

4. Recientemente, El Vocero ha solicitado de la Unión y ésta a aceptado llevar a cabo ciertas concesiones, con relación a unos beneficios del Convenio Colectivo vigente. Dichas concesiones se hacen según los términos y condiciones que aquí se detallan:

> A. Con miras a lograr ciertas economías en la operación de El Vocero, efectivo el 24 de julio de 2007, se implementarán los siguientes

cambios, en cuanto a los beneficios que aquí se mencionan:

1) El "car allowance" que por Convenio Colectivo tienen derecho ciertos empleados, se reducirá en un veinticinco (25%) porciento.

2) Esta reducción del "car allowance" tendrá una duración no mayor de 6 meses, por lo que efectivo al culminar el sexto mes calendario desde la firma de esta estipulación, los empleados recibirán el "car allowance" en su totalidad, como dispone el Convenio Colectivo vigente.

3) Efectivo al 1ro agosto de 2007, la aportación que El Vocero realiza al Plan Médico será de $317.00. Mediante asamblea a esos efectos, los miembros de la Unidad Apropiada, seleccionaron como la proveedora del Plan Médico a MAPFRE. Cualquier diferencia, si alguna, entre la cantidad aquí establecida, como la aportación de El Vocero y el costo de la cubierta seleccionada por el empleado, será la aportación que hará el empleado.

4) Esta reducción de la aportación patronal al plan médico, continuará en vigencia por un período máximo de 1 año.

B. La Compañía se compromete que a partir de la fecha de esta estipulación, realizará los pagos del estipendio de gasolina a los Agentes de Copia a Comisión y a los empleados asalariados, tal y como dispone el Convenio Colectivo vigente. La Compañía reconoce que adeuda a los empleados, por concepto de estipendio, por el tiempo que dicho beneficio no se ha pagado. La Compañía se compromete, además, a pagar dicha deuda tan pronto las operaciones de El Vocero, así lo permitan.

C. El Vocero de Puerto Rico se compromete que durante el período de vigencia del Convenio Colectivo, permitirá que la Unión lleve a cabo una auditoría de las finanzas de El Vocero de Puerto Rico, una vez al año, a partir de la firma de esta estipulación. El Vocero de Puerto Rico se compromete en proveer a la Unión aquella información necesaria para llevar a cabo dicha auditoría.

D. La Compañía, concederá a cada empleado, miembro de la Unidad Apropiada, el derecho a utilizar seis (6) días flotantes para uso personal, con paga. El empleado

deberá notificar a "La Compañía" cual es el feriado de su selección diez (10) días calendario antes de disfrutarlo. Si más de dos (2) empleados solicitan el mismo día feriado de su selección, se les otorgará dicho día sobre la base de su antigüedad y las necesidades de "La Compañía".

a) El Vocero de Puerto Rico, se compromete además, que si dentro del periodo de extensión del Convenio Colectivo, el periódico ha tenido alguna ganancia, negociará de buena fe con la Unión, con miras a acordar mayores y mejores salarios y beneficios económicos para los empleados de la Unidad Apropiada.

b) Las partes acuerdan que los salarios y beneficios económicos negociados para el nuevo Convenio Colectivo que comenzará a regir el 1ero de junio de 2009, serán retroactivos desde el 1ro de enero de 2009.

E. Como condición esencial para que esta estipulación continúe vigente, El Vocero deberá cumplir con todas las disposiciones del Convenio Colectivo. En caso de que El Vocero deje de hacer los pagos objetos de las concesiones mencionadas en los párrafos B hasta D estipulados, esta estipulación podrá ser dejada sin efecto por UPAGRA, mediante notificación por escrito a esos efectos. En dicho caso, todas las concesiones aquí negociadas a favor de El Vocero, se dejarán sin efecto, no obstante, continuará vigente el resto de los acuerdos.

F. El hecho que UPAGRA permita que en algún momento El Vocero incumpla con este acuerdo, no constituye ésto una renuncia de parte de UPAGRA a exigir el cumplimiento de esta estipulación y/o dejar sin efecto el acuerdo, lo que entienda mejor.

G. Esta estipulación representa la totalidad de los acuerdos entre las partes.

H.   No se debe entender que esta estipulación enmienda o deja sin efecto cualquier disposición del Convenio Colectivo vigente y/o estipulaciones entre las partes.

I. En caso de que El Vocero incumpla con esta estipulación, y/o con los pagos aquí estipulados, la Unión podrá acudir al Tribunal de Primera Instancia, para solicitar el remedio correspondiente y El Vocero se compromete a pagar todos los gastos, costas y honorarios de abogados incurridos por UPAGRA, en todo el proceso administrativo y judicial.

J. En caso de que una agencia administrativa, o un Tribunal de competencia y jurisdicción declarara inválida en parte, o en su totalidad esta estipulación, las partes vienen obligadas a reunirse inmediatamente para negociar una estipulación, conforme al propósito y espíritu de este acuerdo.

K.   Esta estipulación tendrá vigencia según los términos aquí acordados, pero en ninguna ocasión, será mas allá de 1 año desde la fecha de la firma de esta estipulación.

En San Juan, Puerto Rico, hoy __2__ de agosto de 2007.


POR LA UNIÓN:                              POR EL VOCERO

_____                   _____
Sr. Néstor Soto, Presidente               Sr. Miguel Roca, Presidente

IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| TRUSTEES OF THE NEWSPAPER GUILD | ) | |
| INTERNATIONAL PENSION FUND, *et al.* | ) | **Case No. 1:08-cv-00608** |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| EL VOCERO DE PUERTO RICO, INC., *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

### ORDER

In accordance with Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants's Motion to Vacate Entry of Default , and this Court being duly advised in its premises, it is this _____ day of _____, 200 ___,

ORDERED, that such Motion shall be and hereby is DENIED.

_____
United States (District) Judge